Filed 7/8/24  P. v. Maughs CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CHRISTOPHER MAUGHS,<br><br>Defendant and Appellant. | C097228<br><br>(Super. Ct. No. 21F5550) |

In 2016, defendant Robert Christopher Maughs drove under the influence of methamphetamine and crashed his car, seriously injuring his passenger. He was sentenced to five years in state prison. Shortly after his release, in 2020, Maughs drove under the influence of methamphetamine and crashed his car again—but this time, his passenger died. A jury found him guilty of second degree murder and driving under the influence causing injury with a prior conviction. On appeal, Maughs contends that the trial court prejudicially erred by instructing the jury that the charged murder offense was a general intent crime. We conclude that the trial court's erroneous instruction was harmless beyond a reasonable doubt and therefore affirm.

1

## BACKGROUND

### I.

In the very early morning on March 25, 2016, Maughs was under the influence of methamphetamine and driving at speeds of about 100 miles per hour. His car struck a bridge railing, flew over 100 feet, landed on a creek bank, and rolled over. Maughs emerged from the car, but a passenger was pinned inside and suffered severe injuries.

Maughs pleaded no contest to driving under the influence causing bodily injury. One of the admonitions on the change-of-plea form said: "I understand that being under the influence of alcohol and/or drugs impairs my ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol and/or drugs. If I continue to drive under the influence of alcohol and/or drugs, and as a result of my driving someone is killed, I can be charged with murder." Maughs initialed the admonition and signed the form. The trial court sentenced him to five years in prison.

Maughs was released on August 30, 2020, and placed on parole. The terms of his parole required him to abstain from using controlled substances without a prescription.

### II.

Approximately three months after his release, in December 2020, Maughs again drove while under the influence of methamphetamine and again crashed his car. This time his passenger died.

The prosecution charged Maughs with second degree murder (Pen. Code, § 187, subd. (a)) and driving under the influence causing injury with a prior conviction (Veh. Code, §§ 23153, subd. (a), 23560).[1] With respect to the driving under the influence count, the prosecution alleged that Maughs caused death or bodily injury to two victims.

---

[1] Undesignated statutory references are to the Penal Code.

(Veh. Code, § 23558.) The prosecution also alleged a prior strike conviction, a prior serious felony conviction, and various aggravating factors. (§§ 667, subd. (a), 1170.12.)

At trial, the People introduced evidence that Maughs was speeding down the road and illegally passing other cars. He drove on the sidewalk and swerved in and out of traffic.

The People presented testimony that Maughs sped through a red light without braking and collided with a car that was making a left turn. His car flipped up and wrapped around a pole. Police estimated that Maughs was driving between 60 and 71.5 miles per hour.

Emergency personnel extracted Maughs from his car. The passenger was deceased. The other driver sustained minor injuries.

A responding police officer testified that Maughs was brought to the hospital, where his blood was drawn. A criminalist testified that Maughs's blood had a concentration of methamphetamine indicating recreational, and not therapeutic, use. The criminalist further testified that driving under the influence of methamphetamine could lead someone to drive at very high speeds, make aggressive lane changes, run red lights, and get into traffic collisions. She explained that a driving pattern like Maughs's was consistent with someone under the influence of methamphetamine and that he was too impaired to operate a vehicle safely.

Maughs testified in his defense. He recalled his prior conviction for driving under the influence of methamphetamine but did not remember going over the terms and conditions of his parole. He did not remember the 2020 accident. He admitted that he was familiar with the effects of methamphetamine and that it impaired his driving abilities.

Maughs also acknowledged injuring his passenger in the 2016 crash. He acknowledged his initials on the plea form indicating that he understood that he could be

3

charged with murder if someone was killed while he was driving under the influence. He said he did not recall signing the form.

The trial court instructed the jury on the union of act and intent using CALCRIM No. 250, "Union of Act and Intent:  General Intent," which explained in part:  "For you to find a person guilty of the crimes of second-degree murder as charged in Count 1, driving under the influence of a drug causing injury as charged in Count 2 . . . that person must not only commit the prohibited act or fail to do the act required but must do so with wrongful intent.  A person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do the required act; however, it is not required that he or she intend to break the law.  The act required is explained in the instruction for the crime or allegation as I provide them."  The trial court did not read CALCRIM No. 251, "Union of Act and Intent:  Specific Intent or Mental State."

As to the second degree murder charge, the trial court instructed the jury with CALCRIM No. 520, saying, in part, "The defendant is charged in Count 1 with murder in violation of Penal Code section 187(a).  To prove that the defendant is guilty of this crime, the People must prove the following:  One, the defendant committed an act that caused the death of another person; and two, when the defendant acted, he had a state of mind called malice aforethought."

That instruction further provided:  "There are two kinds of malice aforethought: express malice and implied malice.  Pro[of] of either is sufficient to establish the state of mind required for murder.  The defendant had express malice if he unlawfully intended to kill.  The defendant had implied malice if all of the following are shown:  He intentionally committed the act; the natural and probable consequences of the act were dangerous to human life; at the time he acted, he knew his act was dangerous to human life; and, four, he deliberately acted with conscious disregard for human life."

The trial court also gave the instruction in CALCRIM No. 225, which said in relevant part:  "The People must prove not only that the defendant did the acts charged

4

but also that he acted with a particular intent or mental state. The instruction for each crime and allegation explains the intent or mental state required."

In closing arguments, the defense referred to the elements of implied malice murder and argued that Maughs acted without the requisite mental state. The prosecution likewise addressed the mental state required for implied malice murder. It argued that Maughs knew his actions were dangerous and that he acted with conscious disregard for human life.

The jury found Maughs guilty of both counts. As to the driving under the influence count, the jury also found true the allegations that the crime involved great violence and injury to more than one victim. The trial court found true the allegations of a prior strike conviction and a prior serious felony conviction. The court sentenced him to a prison term of 30 years to life plus five years for the murder conviction. It imposed, but stayed, a seven-year sentence for the driving under the influence charge.

## DISCUSSION

Maughs argues that the trial court's use of CALCRIM No. 250 misled jurors into believing that implied malice murder required the People to prove only a general intent to commit a wrongful act and not a culpable mental state. We agree that the court erred in using CALCRIM No. 250 but conclude that the error was not prejudicial.

### I.

A trial court is required to instruct the jury on the elements of a charged offense. (*People v. Mil* (2012) 53 Cal.4th 400, 409.) When the offense requires specific intent, the court must instruct jurors on the requisite mental state. (*People v. Ngo* (2014) 225 Cal.App.4th 126, 162.)

We review de novo a claim of instructional error. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) When evaluating whether it is reasonably likely that the jury was misled, we consider the instructions as a whole. (*People v. Tate* (2010) 49 Cal.4th 635, 696.)

5

## II.

The trial court erred in instructing the jury with CALCRIM No. 250. As noted above, CALCRIM No. 250 instructs juries on the elements of a general intent crime, stating that a "person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do the required act; however, it is not required that he or she intend to break the law." But implied malice murder requires "proof that the defendant acted with a specific and particularly culpable mental state." (*People v. Whitfield* (1994) 7 Cal.4th 437, 450.) That culpable mental state requires the prosecution to establish that the defendant " 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) Accordingly, as the bench notes make clear, CALCRIM No. 250 "**must not** be used if the crime requires a specific mental state, such as knowledge or malice, even if the crime is classified as a general intent offense." (Judicial Council of Cal., Crim. Jury Instns. (2024 ed.) Bench Notes to CALCRIM No. 250.)

We conclude, however, that the trial court's error in instructing the jury with CALCRIM No. 250 was not prejudicial. We have applied the harmless-beyond-a-reasonable-doubt test set forth in *Chapman v. California* (1967) 386 U.S. 18, 24, a test that applies to trial errors that violate a defendant's federal constitutional rights, to this type of instructional error. (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1160-1161.) Under *Chapman*, the "reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 3; see also *People v. Schuller* (2023) 15 Cal.5th 237, 244.)

The trial court's error here was harmless for at least two reasons. First and most significantly, in addition to the erroneous instruction, the trial court instructed the jury using CALCRIM No. 520, which required the jury to find that Maughs acted with malice

6

to find him guilty of murder. That instruction specifically instructed the jury on the mental state required for implied malice murder: that at the time Maughs acted, he knew his act was dangerous to human life, and he deliberately acted with conscious disregard for human life.

The trial court also gave the instruction in CALCRIM No. 225, which told the jury that the instruction "for each crime and allegation explains the intent or mental state required." This instruction thus further directed the jury to look to CALCRIM No. 520—the instruction for the crime alleged—in determining which elements the People were required to prove.

Maughs acknowledges that the jury was instructed with CALCRIM No. 520, but argues that CALCRIM No. 250 fatally undermined its requirements. We disagree with that interpretation of the instructions. CALCRIM No. 250 did not tell the jury to disregard the mental state requirement laid out in the instruction (CALCRIM No. 520) specifically pertaining to the offense charged. The jury was also instructed that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." We therefore see no reasonable possibility that the jury was misled into believing that it could convict Maughs of murder based on the bare finding that he intended to commit a prohibited act.

Second, there was overwhelming evidence that Maughs acted with implied malice, such that "no 'rational juror who made the findings reflected in the verdict and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict the defendant [absent the instructional error].' " (*People v. Schuller*, *supra*, 15 Cal.5th at p. 244.) Fewer than five years before the current offense, Maughs used methamphetamine, drove his car, and crashed it, harming his passenger. At trial, he admitted that methamphetamine impaired his driving ability. He also acknowledged that he had been warned that he could be charged with murder if he drove under the influence

again and someone died. And yet, three months after being released on parole, he again drove his car under the influence of methamphetamine.

Maughs argues that evidence at trial would have allowed the jury to conclude that he did not knowingly endanger human life or act in conscious disregard for life. For example, he argues that some evidence at trial showed that he braked and tried to avoid the collision, while other evidence called into question one witness's account. The People dispute his interpretation of the facts, but even accepting it as true, we are confident that, for the reasons explained above, no reasonable jury "would have found in [his] favor . . . given the jury's actual verdict and the state of the evidence." (*People v. Schuller*, *supra*, 15 Cal.5th at p. 261.)

## DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　Feinberg, J.



We concur:



　/s/
Mauro, Acting P. J.



　/s/
Duarte, J.



8